## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NUVEEN SERVICES, LLC, | : | |
| | : | Civil Action No. 1:23-cv-09942 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| XAVIER FULLER, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff Nuveen Services, LLC ("Nuveen") hereby brings the following Complaint for injunctive relief and damages against its former employee, Xavier Fuller ("Fuller"), and, in support thereof, avers as follows:

### I. PARTIES

1.       Nuveen is a Delaware limited liability company with its principal place of business in the State of New York.  Its sole member, Nuveen LLC, is a Delaware limited liability company with its principal place of business in New York.

2.       Nuveen is one of the companies that comprises Teachers Insurance and Annuity Association of America ("TIAA"), a New York life insurance company with its headquarters and principal place of business in New York.

3.       Fuller is a former Nuveen employee.

4.       Fuller is a citizen of the State of California and resides at 539-41 Noe Street, San Francisco, California 94114.

### II. JURISDICTION AND VENUE

5.       This Court has subject matter jurisdiction over this action by virtue of diversity of citizenship pursuant to 28 U.S.C. §1332.  The amount in controversy exceeds Seventy-Five

Thousand Dollars ($75,000), exclusive of interest and costs, and is between citizens of different States.

6.      This Court has personal jurisdiction over Fuller under the terms of a Separation Agreement and Release (the "Agreement") signed by Fuller providing: "<u>Resolution of Disputes</u>. You agree to submit to the jurisdiction of the courts of the State of New York or the federal court located in the Southern District of New York in connection with any action related to this Agreement…" (*See* Exhibit "A" at ¶ 19)

### III.  <u>FACTS</u>

**A)  Fuller's Contractual Obligations**

7.      Fuller worked for Nuveen from 2010 through November 16, 2018.

8.      At the time of his departure, Fuller worked in Nuveen's Global Investments, Energy and Infrastructure department.

9.      During the course of his employment, Fuller gained access to confidential information relating to, among other things, Nuveen, its clients, investors, strategies, products, and services.

10.     In return for valuable consideration, Fuller signed a Separation Agreement and General Release ("Agreement")

11.     The Agreement contains Fuller's promise not to use or disclose any confidential information belonging to Nuveen.  (*Id*. at ¶ 6).

12.     The Agreement further required Fuller to return all confidential information in his possession to Nuveen at the time of his departure from the company.  (*Id*. at ¶ 7).

13.     The valuable consideration Nuveen provided under the Agreement was contingent on Fuller "observing its terms." (*Id*. at ¶ 2).

14.     The Agreement reiterates that Fuller's "Eligibility for Severance Consideration" is based, in part, on "your [Fuller's] compliance with this Agreement's terms." (*Id*. at ¶ 3).

15.     In connection with his ongoing employment with Nuveen, Fuller also signed a Confidentiality and Non-Solicitation Agreement (the "CNA") containing confidentiality and other covenants. (*See* Exhibit "B").

16.     The CNA restricts Fuller's use of Nuveen's confidential and trade secret information. (*Id*. at ¶ 1).

17.     The CNA similarly requires Fuller to return all confidential information to Nuveen at the time of his departure. (*Id*. at ¶ 4).

18.     The CNA also provides: "**<u>EMPLOYEE'S AFFIRMATION OF THOROUGH REVIEW</u>**. EMPLOYEE AFFIRMS THAT EMPLOYEE HAS CAREFULLY READ THIS AGREEMENT, KNOWS AND UNDERSTANDS ITS TERMS, CONDITIONS AND EFFECTIVE DATE, AND HAS HAD THE OPPORTUNITY TO ASK ANY QUESTIONS THAT EMPLOYEE MAY HAVE PRIOR TO SIGNING THIS AGREEMENT." (*Id*.at ¶ 11) (capitalization and bold in the original).

19.     The Agreement (at ¶ 11) and CNA (at ¶ 7) each provide that Nuveen is entitled to preliminary and/or permanent injunctive relief upon any breach or threatened breach of either agreement, to expedited discovery, and to attorneys' fees and costs.

**B) Fuller Violated His Contractual and Common Law Obligations**

20.     Although Fuller departed Nuveen in 2018, Nuveen only discovered recently that he violated his contractual and other obligations by improperly retaining, disclosing, or otherwise using the company's confidential information. Fuller's continued possession of this confidential information, as well as his disclosure or use of it, causes irreparable harm to Nuveen and to the

third parties entrusting this confidential information to Nuveen.

21.      More specifically, only a week before the Agreement was transmitted to Fuller, Fuller emailed a confidential Private Placement Memorandum ("PPM") from his personal gmail address to a third party.  (A copy of Fuller's transmittal email is attached as Exhibit "C").

22.      The PPM, nearly 60 pages in length, was prepared by a private company solely for the benefit of a limited number of institutional accredited investors interested in the purchase of Senior Notes.  A Senior Note is a type of bond that takes precedence over other debts in the event a company declares bankruptcy or is forced into liquidation.

23.      At the outset, the PPM states: "The information contained in this Memorandum is highly confidential."  A PPM is a document created to sell investments (including Senior Notes or other bonds) offered only to private investors.  PPMs typically only are distributed to a limited audience of qualified, accredited potential investors and, in many cases, recipients are required to sign non-disclosure agreements.

24.      The PPM proceeds to state: "This Memorandum is submitted for the recipient's confidential use in connection with the private placement of the Notes and may not be used, reproduced, or distributed for any other purpose."

25.      The PPM also provides: "By accepting delivery of this Memorandum, the investor receiving this Memorandum agrees to maintain the confidentiality of the information contained herein…"

26.      The PPM includes, *inter alia*, information on: (i) the internal workings and structure of the company; (ii) historical revenue, expense, profit, and EBITDA performance information companywide and broken down among the company's various business units; (iii) the number of employees by business unit and location; (iv) the key customers and/or suppliers of the company's

various business units; (v) barriers to entry for potential competitors; (vi) the company's recent acquisitions; and (vii) the company's equity ownership by individual.

27.     The PPM also contains future projections for the company with respect to revenues, expenses, profit, and EBITDA performance.

28.     In late September 2023, an executive affiliated with the company that prepared the PPM advised Nuveen that confidential information therein had been compromised.

29.     Nuveen then immediately commenced an internal investigation.

30.     The investigation revealed that Fuller had emailed the highly confidential PPM from his personal gmail address to a third party not entitled to receive the information and not subject to any confidentiality restrictions

31.     As mentioned above, Fuller's last day of employment with Nuveen was on November 16, 2018.

32.     At no time in between Fuller emailing the PPM from his personal gmail address in September 2018, and his departure in November 2018, did Fuller (i) return the PPM to Nuveen or (ii) to Nuveen's knowledge, delete the PPM from his personal gmail account.

33.     Upon information and belief, in addition to improperly emailing the PPM to a third party, Fuller himself still has possession of the PPM.

34.     Further, Nuveen's investigation raised significant concerns that Fuller may be in possession of additional confidential information.

35.     For instance, on November 15, 2018, the very day before his departure, Fuller emailed to his personal gmail address a list of firms he had relationships with while at Nuveen, including firms with which Nuveen continues to maintain business relationships.

36.     The Agreement (at ¶ 6(i) and (iv)) defines confidential information to include

information pertaining to Nuveen's "individual or institutional client, investor, or participant relationships" as well as any "vendor, supplier, contingent worker and/or independent contractor lists."

37.    The CNA (at ¶ 1(a)(i) and (iv)) defines confidential information to include this same information.

38.    Based on all of the above, Fuller has violated his contractual and other obligations and, upon information and belief, continues to have possession of Nuveen's confidential information.

## COUNT I – BREACH OF CONTRACT

39.    The allegations of Paragraphs 1 through 38 are incorporated herein by reference with the same force and effect as if set forth in full below.

40.    The confidentiality provisions in the Agreement and CNA are fully enforceable under New York and/or California law.[1]

41.    Fuller has violated his contractual obligations by retaining, disclosing, and/or using Nuveen's confidential information.

42.    As a result of Fuller's breach, Nuveen has suffered and continues to suffer immediate and irreparable harm.  In addition, or in the alternative, Nuveen has suffered damages in an amount to be determined at trial.

## COUNT II – BREACH OF THE DUTY OF LOYALTY

43.    The allegations of Paragraphs 1 through 42 are incorporated herein by reference with the same force and effect as if set forth in full below.

44.    Fuller owed a duty of loyalty to Nuveen throughout his employment.

---

[1] The Agreement and CNA both contain New York choice-of-law provisions.  (*See* Exhibit "A" at ¶ 18 and Exhibit B at ¶ 10).

45.     Fuller breached his duty of loyalty, *inter alia,* by removing, disclosing, and/or using confidential information while still a Nuveen employee.

46.      As a result of Fuller's breach, Nuveen has suffered and continues to suffer immediate and irreparable harm.  In addition, or in the alternative, Nuveen has suffered damages in an amount to be determined at trial.

**WHEREFORE**, by virtue of the foregoing acts, Nuveen seeks judgment in its favor and an Order against Fuller granting the following relief:

A.     Preliminarily and permanently enjoins Fuller from using or disclosing any of Nuveen's confidential, proprietary and/or trade secret information for any purpose;

B.     Orders Fuller to return to Nuveen all originals and copies of Nuveen's confidential information (including without limitation, the PPM), and any other files, devices and/or documents that contain or relate to Nuveen's confidential and proprietary information, including without limitation any and all such information stores on computers or other electronic storage devices;

C.     Orders Fuller to produce for inspection and imaging all computers and other electronic storage devices and email accounts belonging to, under the control of, accessible to, or operated by Fuller;

D.     Awards Nuveen actual, incidental, compensatory and consequential damages to be proven at trial, including but not limited to the $198,000 in consideration provided to Fuller under the Agreement;

E.     Awards Nuveen exemplary or punitive damages in an amount to be proven at trial due to Fuller's willful and malicious activities;

G.     Awards Nuveen its costs and expenses incurred herein, including reasonable attorneys' fees and interest;

H.      Awards Nuveen such further relief as the Court deems necessary and just.

Dated: November 9, 2023

Respectfully submitted,

*s/Noel A. Lesica*
Noel A. Lesica
noel.lesica@ogletree.com

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Tel: (973)385-1827
Fax: (973) 656-1611

Christopher C. Coss, Esq.
ccc@cossmomjian.com
(*pro hac vice* forthcoming)
Coss & Momjian, LLP
Two Bala Plaza, Suite 300
Bala Cynwyd, PA  19004
Tel: (610) 667-6800
Fax: (610) 667-8174

*Attorneys for Nuveen Services, LLC*