UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

NUVEEN SERVICES, LLC,

Plaintiff,

-v- No. 23-CV-09942-LTS-GS

XAVIER FULLER,

Defendant.

-------------------------------------------------------x

MEMORANDUM ORDER ADOPTING REPORT AND RECOMMENDATION IN PART

Magistrate Judge Stein's August 1, 2024, Report and Recommendation (docket entry no. 64 (the "Report")) recommends granting in full defendant Xavier Fuller's ("Defendant" or "Fuller") motion to dismiss the Second Amended Complaint (docket entry no. 32 (the "SAC")) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court has thoroughly reviewed the Report, the objections from plaintiff Nuveen Services, LLC ("Plaintiff" or "Nuveen") (docket entry no. 65 ("Objs.")), and Defendant's response (docket entry no. 71 ("Response")). For the reasons stated below, the Report is adopted in part. Defendant's motion to dismiss the SAC is denied with respect to certain of the breach of contract claims asserted in Count I and denied with respect to the remainder of Count I, and it is granted with respect to the breach of fiduciary duty claims asserted in Count II of the SAC.

## I. BACKGROUND[1]

The factual background and relevant procedural history are set forth in the Report. The Court adopts the findings of fact as stated in the Report and assumes familiarity with the facts stated therein.[2]

In brief, Defendant worked for Nuveen from 2010 through November 16, 2018. (Report at 7.) On September 13, 2018, Defendant received a copy of a private placement memorandum (the "PPM") relating to an entity with which Nuveen did business, on his Nuveen work email address, from another Nuveen employee (the "September 13 Email"). (Id. at 4.) The SAC alleges that the PPM was highly confidential and labeled conspicuously as such. (SAC ¶¶ 40, 49.) On September 20, 2018, Plaintiff used his personal Gmail address to email a copy of the PPM—whose substance and confidentiality labeling were the same as that of the copy attached to the September 13 Email—to a third party (the "September 20 Email"). (Report at 2; SAC ¶¶ 39-40.) However, in a declaration Defendant filed in this action, he asserts that the PPM attached to the September 20 Email did not "c[o]me from Nuveen." (Report at 16 (quoting SAC ¶ 36).) Rather, he asserts that the copy of the PPM attached to the September 20 Email was a copy that an unnamed non-Nuveen third party had previously sent to him at his personal email address. (Id.) The SAC neither alleges that the copy of the PPM attached to the September 20 Email originated from the copy he had received on his work email address from a Nuveen employee, nor does it deny that the copy he sent originated from the copy he allegedly received from the unnamed third party.

---

1 The Court's citations to page numbers reference the ECF-designated page numbers.

2 Plaintiff does not object to the Report's recitation of facts.

On November 15, 2018, his penultimate day of employment at Nuveen, Defendant emailed a third party "a list of firms he had relationships with while at Nuveen" (docket entry no. 15-2 (the "November 15 Email")). (Report at 23 (quoting SAC ¶ 42).) Defendant sent the November 15 Email from his Nuveen email address and copied his personal email address. (Id. at 24.)

Plaintiff alleges that Defendant's September 20 Email and November 15 Email constituted breaches of a May 23, 2014 Confidentiality Agreement (docket entry no. 32-2 (the "Confidentiality Agreement")) and a November 26, 2018 Separation Agreement (docket entry no. 32-1 (the "Separation Agreement")),[3] each of which prohibited "retaining, disclosing, and/or using Nuveen's Confidential Information." (Report at 10 (quoting SAC ¶¶ 54-57).) Plaintiff further alleges that Defendant breached these agreements by retaining the PPM and any other Confidential Information in his possession following the termination of his employment.

As relevant here, the Confidentiality Agreement defines Confidential Information as "information, in any form (tangible or intangible), related to the business of the Company that the Company has not made public or authorized public disclosure of, and that is not generally known, through proper means, to the public or others." (Confidentiality Agreement § 1(a).) It further specifies that Confidential Information "includes, but is not limited to," certain categories of information "as maintained within the Company's internal, non-public records," including "any and all technical, proprietary or other information that the Company has a legal or ethical obligation to treat as confidential, or that the Company treats as proprietary, confidential, or for

[3] The Separation Agreement was executed by Defendant on November 26, 2018, well after the November 15 Email was sent, and was countersigned by Plaintiff on January 9, 2019. (Report at 7.)

internal use," which further includes certain "information relating to third parties that is provided to the Company." (Id. § 1(a)(vi).)

The Separation Agreement lays out in detail Defendant's obligations to return certain Nuveen property following his termination. It requires Fuller to return "any and all TIAA [(the parent company of Nuveen)] property . . . . that you have had in or under your possession or control, at any time, including, but not limited to, . . . all Confidential Information." (Separation Agreement ¶ 7.) It defines Confidential Information as "information and materials that are non-public, and/or that are proprietary and/or that constitute trade secrets of TIAA" (id. ¶ 6), including "information relating to third-parties that is provided to TIAA during merger, acquisition, or divestiture activities" (id. ¶ 6(a)(vi)). Under the Separation Agreement, Confidential Information also includes "business, financial and other operational information pertaining to TIAA . . . suppliers" (id. ¶ 6(a)(iv)) and "information that TIAA has a legal or ethical obligation to treat as confidential, or that TIAA treats as proprietary, confidential, or for internal use only; that TIAA has designated as confidential or proprietary; . . . or, that you know should be, or has been, treated by TIAA as confidential, in each case, whether or not such information is or was owned or developed by TIAA" (id. ¶ 6(a)(vi)).

Plaintiff also alleges that Defendant breached his fiduciary duty of loyalty in connection with the September 20 Email and the November 15 Email "by removing, disclosing, and/or using Confidential Information while still a Nuveen employee." (Report at 10 (quoting SAC ¶¶ 58-61).)

## II. DISCUSSION

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28

U.S.C.A. § 636(b)(1)(C) (Westlaw through P.L. 119-103). To the extent that a party makes a specific objection to the magistrate judge's findings, the Court must make a de novo determination. United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997). Conversely, to the extent that a party makes conclusory objections, fails to object, or simply reiterates a previous argument before the magistrate judge, the Court reviews a report strictly for clear error. Pearson-Fraser v. Bell Atl., No. 01-CV-2343-WK, 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); Syville v. City of New York, No. 20-CV-00571-LTS-SDA, 2022 WL 36477, at *1 (S.D.N.Y. Jan. 4, 2022).

As noted above, the Report recommends the dismissal of the SAC in its entirety under Rule 12(b)(6).[4] Plaintiff objects to the recommendations with respect to each of its claims. The Court takes each of Plaintiff's objections in turn. Where Plaintiff has specifically objected, the Court reviews de novo. Where Plaintiff has not, the Court reviews for clear error.

For reasons explained below, the Court finds meritorious several of Plaintiff's objections as to its breach of contract claims. Defendant's motion to dismiss is accordingly denied in part as to the breach of contract claims. The Court overrules Plaintiff's objections to the recommended rulings on Plaintiff's breach of fiduciary duty claim.

A. Breach of Contract

Under New York law, "the elements of a breach of contract claim are: (i) existence of a contract, (ii) performance of the contract by one party, (iii) breach by the other party, and (iv) damages." Johnson v. Clearview AI, Inc., No. 23-CV-2441-KPF, 2024 WL 2274267, at *5 (S.D.N.Y. May 20, 2024). Plaintiff does not object to the Report's treatment of

---

[4] Plaintiffs do not object to Judge Stein's recitation of the relevant legal standards, so the Court, finding no clear error, adopts that recitation in full.

the first, second, and fourth elements. Finding no clear error, the Court adopts the Report's recommendations as to those elements, including the Report's recommended conclusion that the SAC sufficiently pleaded damages.

Plaintiff objects to the Report's treatment of its various theories of breach. Upon de novo review, Defendant's motion to dismiss Count I is granted as to Plaintiff's breach of contract claims, except for Plaintiff's claims that: (1) Defendant breached the Confidentiality Agreement by disclosing the PPM in the September 20 Email; and (2) Defendant breached the Confidentiality Agreement and the Separation Agreement by retaining the PPM after he left Nuveen. Except where the Court respectfully disagrees with Judge Stein's reasoning, the Court adopts the Report. Below, the Court addresses each theory of breach in turn.

1. The September 20 Email

Plaintiff's first theory of breach is that Defendant "emailed the highly confidential PPM from his personal gmail address to a third party not entitled to receive the information and not subject to any confidentiality restrictions," which violated the Confidentiality Agreement. (SAC ¶ 30.)[5] The Report finds that the SAC fails to state a claim because it does not allege that "the PPM transmitted by Fuller on September 20, 2018 is the copy he received at his Nuveen email address on September 13, 2018." (Report at 15-16.) The Report observes, accurately, that "[t]he SAC contains no allegations, even on information and belief, that link the September 13

5 Plaintiff concedes that it cannot claim breach of the Separation Agreement based on the transmission of the September 20 Email because the Separation Agreement was not executed until November 2018. (Report at 14 n.8.) The Report's conclusion to that effect is adopted in full.

Email to the September 20 Email." (Id. at 16.) With respect to this assessment of the factual content of the SAC, Plaintiff's contrary objections are overruled.

Nonetheless, the Court finds that the Report errs in reaching its subsequent conclusion that "the SAC does not allege that Fuller's transmission of the PPM he received from a third party breached" his duties under the Confidentiality Agreement. (Id. at 18.) As an initial matter, the SAC did not allege that the digital copy of the PPM Defendant sent on September 20 originated from a third-party source; rather, it recited Defendant's assertion to that effect. (SAC ¶ 38.) But more fundamentally, the Court finds that Plaintiff plausibly pleads that Defendant violated the Confidentiality Agreement by sending the PPM on September 20, regardless of whether the particular digital copy he sent originated from a third party rather than from Nuveen.

Reading the SAC and the Confidentiality Agreement, which was in place on September 20 and is integral to the SAC, in the light most favorable to Plaintiff, the Court concludes that Plaintiff plausibly pleads that Fuller violated the Confidentiality Agreement by disclosing the PPM in the September 20 Email. The Confidentiality Agreement defines Confidential Information to include "information that the Company has a legal or ethical obligation to treat as confidential, or that the Company treats as proprietary, confidential, or for internal use only" and covers information sent by third parties that meets those criteria. (Confidentiality Agreement § 1(a)(vi).) The SAC alleges that the PPM was clearly designated as confidential in multiple ways. (SAC ¶¶ 40, 48.) This strongly supports an inference that Nuveen either "ha[d] a legal or ethical obligation to treat" the PPM as confidential or, at a minimum, that Nuveen "treat[ed]" the PPM as "proprietary, confidential, or for internal use only." (Confidentiality Agreement § 1(a)(vi)). Furthermore, the SAC plausibly pleads that, in sending the PPM to Defendant's Nuveen email address on September 13 (SAC ¶ 39), Nuveen placed him

on notice that it treated the PPM's contents as confidential, thereby triggering Defendant's own confidentiality obligations. When taken together, these factual proffers plausibly establish that the September 20 Email breached the Confidentiality Agreement because Defendant transmitted to a third party a document containing the same confidential PPM content that Nuveen had sent Defendant on September 13. (Id. ¶¶ 39, 50.)

The Report's conclusion to the contrary is erroneous. The Report finds (and Defendant admits) that "if [Defendant] transmitted the PPM he received from Nuveen . . . he would have been disclosing Nuveen's 'Confidential Information' within the meaning of the Confidentiality Agreement," but it nonetheless concludes that Plaintiff cannot establish a breach because the SAC does not allege "that the PPM transmitted by Fuller on" September 20 "is the copy he received at his Nuveen email address on September 13." (Report at 15-16.) Despite acknowledging that Plaintiff considered the information in the PPM to be confidential, the Report focuses exclusively on whether the SAC alleged that the digital embodiments of the PPMs Defendant received and sent were identical. By restricting its analysis to the PPMs' digital footprints, the Report overlooks the SAC's allegations that the contents of the PPMs (and the innumerable confidentiality admonishments contained therein) were identical (SAC ¶¶ 39, 50), and it therefore fails to consider any obligations Defendant may have had to maintain the confidentiality of the information contained in the PPMs pursuant to Section 1(a)(vi) of the Confidentiality Agreement. In adopting such a restrictive view, the Report failed to make all permissible inferences in Plaintiff's favor as required at this stage of litigation. Because the PPM that Defendant sent on September 20 contained the same information Plaintiff had denoted as

confidential on September 13, Defendant's alleged breach does not depend on whether the particular digital document he sent originated from Nuveen or from a third party.

In sum, reading the SAC in the light most favorable to the non-movant, Plaintiff plausibly pleads that Defendant violated the Confidentiality Agreement by disclosing the Confidential Information contained in the PPM. This is sufficient to support his cause of action for breach at this stage. Accordingly, Defendant's motion is denied with respect to Plaintiff's claim that Defendant violated the Confidentiality Agreement by sending the September 20 Email.

2. Retention of the PPM

Next, Plaintiff claims that Fuller "retained a copy of the PPM in violation of both the Confidentiality Agreement and the Separation Agreement." (Objs. at 9.) With respect to this claim, the Report begins and ends its analysis with its findings that the SAC only alleges that the PPM sent by Fuller in the September 20 Email was the PPM that Fuller received from a non-Nuveen third party and that Plaintiff's confidentiality obligations did not embrace that digital iteration of the PPM. (Report at 22.) Consequently, the Report recommends dismissal because the Confidentiality Agreement and Separation Agreement "apply only to Confidential Information that constitutes Nuveen's property." (Id. (emphasis in original).) As explained above, this conclusion is inconsistent with the required Plaintiff-friendly reading of the content of the SAC and the provisions of the agreements. On the facts pleaded in the SAC, the Court concludes that Plaintiff plausibly alleged facts sufficient to support his claim of breach as to the information retention provisions of the Confidentiality Agreement and the Separation Agreement, even if Defendant allegedly received the PPM from a third party.

The Confidentiality Agreement requires Fuller to "promptly surrender to the Company . . . immediately upon Employee's Termination Date, any Company property existing

in tangible, written or electronic form in or under Employee's possession or control, including, but not limited to, Confidential Information." (Confidentiality Agreement ¶ 4.) "Company property" is defined to include Confidential Information, which, as described above, is plausibly alleged to include the third-party PPM. Because Plaintiff alleges that Defendant retained the third-party PPM after his termination date (SAC ¶¶ 32, 56), Plaintiff plausibly pleads breach of the Confidentiality Agreement.

Plaintiff similarly pleads breach of the Separation Agreement. That Agreement requires Fuller to return "any and all TIAA property . . . . that you have had in or under your possession or control, at any time," including "all Confidential Information." (Separation Agreement ¶ 7.) "Confidential Information," as noted above, is broadly defined as "information and materials that are non-public, and/or that are proprietary and/or that constitute trade secrets of TIAA." (Id. ¶ 6.) On its face, this language does not differentiate information based on its origin or how it was received, nor does it otherwise exclude the non-Nuveen third party copy of the PPM. Indeed, the Separation Agreement defines Confidential Information to include third party–sourced information, such as "information relating to third-parties that is provided to TIAA during merger, acquisition, or divestiture activities." (Id. ¶ 6(a)(vi)).

Furthermore, the non-Nuveen third party PPM copy plausibly falls within two additional exemplar categories set forth in the Separation Agreement. First, the PPM may plausibly be "business, financial and other operational information pertaining to TIAA . . . suppliers" (id. ¶ 6(a)(iv)), because the company that is the subject of the PPM is alleged to be a "supplier" (SAC ¶ 46). Second, because the SAC alleges that the PPM indicated that the information contained therein was confidential (SAC ¶¶ 23-27, 49-50), the PPM may plausibly be "information that TIAA has a legal or ethical obligation to treat as confidential, or

that TIAA treats as proprietary, confidential, or for internal use only; that TIAA has designated as confidential or proprietary; . . . or, that you know should be, or has been, treated by TIAA as confidential, in each case, whether or not such information is or was owned or developed by TIAA." (Separation Agreement ¶ 6(a)(vi)). The SAC and the Separation Agreement, viewed in the light most favorable to Plaintiff, plausibly support Plaintiff's claim that Defendant breached the Separation Agreement by retaining the third-party PPM following his termination.

In sum, Plaintiff's objections are sustained, and Defendant's motion to dismiss is denied, with respect to Plaintiff's claims that Defendant violated the Confidentiality Agreement and the Separation Agreement by retaining the third-party PPM after his departure from Nuveen.

3. The November 15 Email

Plaintiff further claims that Defendant breached the Confidentiality Agreement and the Separation Agreement by sending the November 15 Email to a third party.[6] The Report recommends dismissal of these claims, concluding that the SAC fails to "explicitly allege that the November 15 Email contains Confidential Information or constitutes a violation of Fuller's contractual obligations" and that, even if the SAC did include such allegations, the November 15 Email could not be "Confidential Information," as defined in the Agreements, because it consisted of public information. (Report at 23-26.) Plaintiff objects to both conclusions. On de novo review, the Court overrules Plaintiff's objections and adopts the Report's reasoning.

The pertinent provision of the Confidentiality Agreement defines "Confidential Information" as information "that the Company has not made public or authorized public

---

6 The Court notes that Defendant did not even execute the Separation Agreement until several days after he sent the November 15 Email. (Separation Agreement at 16.) Any claim that transmission of the email violated the Separation Agreement is therefore unavailing, and the Report's recommendation to this effect is adopted.

disclosure of, and that is not generally known, through proper means, to the public or others who would be able to use or get value from the information." (Confidentiality Agreement ¶ 1(a).) Similarly, the Separation Agreement requires that Confidential Information be "non-public," "proprietary," or a "trade secret." (Separation Agreement ¶ 6.)

The November 15 Email contains a list of ten firms, people associated with each firm, and short notes about each firm (e.g., "fund of funds," "venture capital."). (SAC ¶ 42; see November 15 Email.) Plaintiff argues that the list contains the identity of client contacts, which Courts in this Circuit have found to be protectable trade secrets. See, e.g., N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 46 (2d Cir. 1999) (holding that "identities of individual contact people with whom [employee] dealt" were protectable where "customers are not readily ascertainable" and "patronage has been secured only through the expenditure of considerable time and money"); C & C Metal Prods. Corp. v. Defiance Button Mach. Co., 759 F.2d 1053, 1063 (2d Cir. 1985) (holding that a customer list developed "through substantial effort and kept in confidence" is protectable if "information it contains is not otherwise readily ascertainable"); Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 517 (S.D.N.Y. 2011) (holding that a client list was protectable because it was "important to Plaintiff's business model" and "contained confidential information not readily available to its competitors").

In the SAC, however, Plaintiff does not allege any facts concerning the relationship between Nuveen and the firms (beyond the anodyne statement that the list includes "firms with which Nuveen continues to maintain business relationships" (SAC ¶ 42)), nor does it even describe the firms listed as clients. There are no allegations concerning secrecy or company policies or practices ordinarily used to protect the information, nor are there even allegations that

the information is non-public, would be difficult to compile, or would give a competitor an unfair advantage. Plaintiff simply alleges that "Fuller emailed to his personal gmail address a list of firms he had relationships with while at Nuveen, including firms with which Nuveen continues to maintain business relationships." (Id.) Nothing in the SAC or the text of the email, even when read in the light most favorable to Plaintiff, proffers facts sufficient to support an inference that the list or the information therein is Confidential Information within the meaning of the Confidentiality Agreement or the Separation Agreement.

Plaintiff's claims that dissemination and retention of the list constituted a breach of the Agreements must therefore be dismissed. The Court overrules Plaintiff's objection to the Report's recommendation of dismissal of the claim.

B. Breach of Fiduciary Duty Claim

Under New York law, a claim for breach of fiduciary duty "requires (1) the existence of a fiduciary duty owed by the defendant; (2) a breach of that duty; and (3) resulting damages." Garvey v. Face of Beauty LLC, 634 F. Supp. 3d 84, 92 (S.D.N.Y. 2022) (citation modified). Plaintiff alleges that Defendant breached the fiduciary duty of loyalty by sending the PPM to a third party, retaining the PPM after his employment concluded, and sending the November 15 Email of contact names. (SAC ¶ 60; Objs. at 15.) A claim that an employee breached his duty of loyalty must demonstrate that the employee "acted directly against the employer's interests—as in embezzlement, improperly competing with the current employer, or usurping business opportunities." Ebel v. G/O Media, Inc., No. 20-CV-7483-PAE, 2021 WL 2037867, at *5 (S.D.N.Y. May 21, 2021) (quoting Veritas Cap. Mgmt., L.L.C. v. Campbell, 918 N.Y.S.2d 448, 449 (N.Y. App. Div., 1st Dep't 2011)).

Plaintiff objects to the Report's recommended determination that Plaintiff fails to allege plausibly that Defendant competed with Plaintiff or acted against Plaintiff's interests. The

Report's recommendation is well founded. "[M]isuse of confidential information alone" is insufficient to support a claim for breach of the fiduciary duty of loyalty absent evidence that the former employee used the information to harm the employer's interests or to benefit a subsequent employer. Leary v. Al-Mubaraki, No. 18-CV-00048-LTS-HBP, 2019 WL 4805849, at *3 (S.D.N.Y. Sept. 30, 2019); see also Delville v. Firmenich Inc., 920 F. Supp. 2d 446, 469-70 (S.D.N.Y. 2013). The SAC does not proffer facts sufficient to support a proper inference of any competitive action by Defendant against Nuveen, usurpation of Nuveen's business opportunity, or use of Nuveen's information to benefit himself or a third party to Nuveen's detriment.

On de novo review, the Court overrules Plaintiff's objection, adopts the recommendation and, for substantially the reasons set forth in the Report, grants Defendant's motion to dismiss Plaintiff's duty of loyalty claim.

## III. CONCLUSION

To the extent set forth above, the Court sustains in part and overrules in part Plaintiff's objections to the recommended dismissal of Count I. Defendant's motion to dismiss the SAC is denied as to Plaintiff's breach of contract claims that (1) Defendant breached the Confidentiality Agreement by disclosing the PPM in the September 20 Email; and (2) Defendant breached the Confidentiality Agreement and the Separation Agreement by retaining the PPM after leaving Nuveen. The motion to dismiss is granted, and the Report's recommendations are adopted, as to the remainder of Count I. Plaintiff's objection to the Report's recommendation that Count II be dismissed is overruled, and the Report's analysis of that claim is adopted.

Defendant's motion to dismiss is therefore granted in full as to Plaintiff's duty of loyalty claims (Count II of the SAC).

Plaintiff may seek leave to amend the SAC by making a motion pursuant to Rule 15(a)(2) of Federal Rule of Civil Procedure. Any such motion must be filed within 21 days of the date hereof and must comply with all applicable federal, local and individual rules of procedure. This case remains referred to Magistrate Judge Stein for general pretrial management.

This Memorandum Order resolves docket entry nos. 42 and 65.

SO ORDERED.

Dated: New York, New York
September 22, 2026

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge